UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARRIME L. STRATTON,

                              Plaintiff,

        v.

OFFICER NARCISE 487; ROBERTS 206;
COUNTY OF ORANGE,

                              Defendants.

No. 23-CV-2152 (KMK)

OPINION & ORDER

Appearances:

Carrime L. Stratton
Loch Sheldrake, NY
*Pro Se Plaintiff*

Carol C. Pierce, Esq.
Orange County District Attorney's Office
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Carrime L. Stratton ("Plaintiff"), proceeding pro se, brings this Action against Officer

Narcise ("Narcise"), Officer Roberts ("Roberts"), and the County of Orange (the "County," and

collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, asserting claims that Defendants

violated his constitutional rights, as well as associated claims under state law.[1]  (*See* Compl. 1–

---

[1] Plaintiff initially brought suit against the Orange County Sherriff's Department (the
"OCSD"), (*see* Compl. 1 (Dkt. No. 1)), but in a prior Order the Court sua sponte dismissed the
OCSD from this Action and construed the Complaint as asserting claims against the County.
(*See* Order of Service ("April 6 Order") 2 (Dkt. No. 7).)

3.)[2]  Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 18).)  For the following reasons, the

Motion is granted in full.

## I.  Background

### A.  Materials Considered

In addition to his complaint, Plaintiff has submitted certain medical records.  (*See* Letter

from Carrime L. Stratton to Court (Mar. 21, 2023) ("March 21 Letter") (Dkt. No. 5).)[3]

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert

the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."  *Thomas v.*

*Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).

"Nevertheless, the Court's consideration of documents attached to, or incorporated by reference

in the Complaint, and matters of which judicial notice may be taken, would not convert the

motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463,

473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts

may "consider the complaint in its entirety . . . , documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu*

*v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the

court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or

---

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

[3] As previously explained, the Court construes the March 21 Letter, which was filed after the Complaint, as a supplement to the Complaint.  (*See* April 6 Order 1 n.1.)

incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

Because Plaintiff is proceeding pro se and the medical records he has submitted are consistent with the allegations in his Complaint, the Court will consider those records, which were submitted very shortly after the Complaint was docketed.  (*See* March 21 Letter.)  *See Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *1 (S.D.N.Y. Mar. 27, 2023) (considering factual allegations in the plaintiff's opposition brief, which was "approximately 180 pages" long and "consist[ed] mostly of attached exhibits," when deciding a motion to dismiss); *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 4485359, at *2 (S.D.N.Y. Sept. 27, 2022) (considering 15 exhibits that were attached to the plaintiffs' opposition brief when deciding motions to dismiss); *cf. Akinlawon v. Polanco*, No. 21-CV-2621, 2023 WL 6216724, at *2 (S.D.N.Y. Sept. 25, 2023) (considering exhibits attached to pro se complaint when deciding a motion to dismiss); *Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (same).

B. Factual Background

The following facts are taken from Plaintiff's Complaint and are assumed to be true for the purposes of ruling on the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

At all times relevant to the instant Action, Plaintiff was incarcerated at Orange County Jail ("OCJ"), located in Goshen, NY. (*See* Compl. 2, 6–12) Narcise and Roberts were corrections officers employed at OCJ during the relevant time period. (*See id*. at 3.)

1. February 26, 2023 Incident

On February 26, 2023, Plaintiff was informed that he had a visitor. (*See* Compl. 4, 7.) Just before the visit began, Plaintiff was seated at "benchmark 18" in the visiting room. (*Id.* at 7.) When his visitor arrived, they and Plaintiff hugged each other and then sat down. (*See id.*)

Approximately 10 minutes later, Narcise arrived at benchmark 18 and informed Plaintiff that the visit had to become a "restricted visit." (*Id.*) When Plaintiff asked why, Narcise told him that "Lobby Officers called and informed [Narcise] that [Plaintiff's] visit was to be restricted to a glass house." (*Id.*) Plaintiff then asked to speak with a supervising sergeant, but Narcise said "no!!!" (*Id.*) At this point, Plaintiff asked his visitor to "exit the visit." (*See id.*)

Plaintiff then "complied and left the visit" with Narcise. (*Id.*) Narcise asked Plaintiff to strip—presumably for a strip search—and told Plaintiff that "[he] could then go to glass house." (*Id.*) Plaintiff reiterated that he still wanted to speak with a sergeant. (*See id.*) Then, Roberts began yelling at Plaintiff, saying that he "helped [Plaintiff] out" the day before, to which Plaintiff responded, "actually you did not[, another officer] assi[s]ted me." (*Id.* at 7–8) Plaintiff also told Roberts that "[he] failed to do [his] job in a professional manner and if [he] had done [his] job correctly the computer system would have been updated" to reflect an "order of protection" that was "amended" such that Plaintiff "no longer [had to] stay away" from the person whom the

4

order was meant to protect.  (*Id.* at 8)[4]  Plaintiff further alleges that "Roberts really began to show that the officers failed to comply with visitors rules and regulations" and that they continued to deny his request to speak with a supervising sergeant.  (*Id.*)

While Plaintiff was speaking with Roberts, Narcise "approach[ed] [Plaintiff] from the back and began to touch [him.]"  (*Id.*)  Plaintiff then felt "[his] right hand being brought behind [his] back while [he] was still [arguing;] then [he heard] click click click . . . the horrifying sound of [hand]cuffs."  (*Id.* at 9)  Given that he was "not aware of what[] [was] going on[,]" Plaintiff "pull[ed] away in a 'panic[.]'"  (*Id.*)  As a result, Narcise "picked [Plaintiff] up from behind and slammed [him] to the ground with deadly force that[] [was] so excessive [his] head smack[ed] to the ground[.]"  (*Id.*)  Additionally, the "[hand]cuff chain . . . [that was] still behind [Plaintiff's] back cause[d] a stabbing to the lower right lumbar of [his] spinal cord [near the sciatic nerve] and [was] instantly painful."  (*Id.*)  Plaintiff was also sprayed with pepper spray, and several other officers who had come to assist Narcise were "a bit aggressive[,]" even though the "situat[]ion [was] under control."  (*Id.*)

Ultimately, Plaintiff was never permitted to speak with a supervising sergeant.  (*See id.*)  However, his visitor was able to "speak to a supervisor[,]" and they told that supervisor that "Narcise acted outside [of] professional standards."  (*Id.* at 9–10.)

### 2.  Plaintiff's Injuries

As a result of the actions described above, Plaintiff alleges in his Complaint that his injuries included: "tender skull"; "profound spine pain"; "lower right lumbar swelling"; and a partially torn sciatic nerve.  (Compl. 5.)  As noted, Plaintiff submitted a number of medical

---

[4] It is not clear from the face of the Complaint, but the restrictions placed on Plaintiff's visit may have stemmed from the original order of protection.  Additionally, the Court notes that, although the amended order of protection is referenced as Exhibit A to Plaintiff's Complaint, that document was not filed with the Complaint.  (*See* Compl. 8.)

records to supplement the allegations in his complaint.  (*See* March 21 Letter.)  Those records

include an OCJ Medical Incident Report dated February 26, 2023, which indicates that Plaintiff

was found to have "[a] small abrasion/redness" on the right side of his lower back.  (*See id.* at 2.)

Plaintiff also submitted numerous patient reports reflecting x-ray results, which state, among

other things, that: (1) his skull was not fractured or dislocated, (*see id.* at 3–4); (2) the

lumbosacral part of his spine was not fractured or dislocated, (*see id.* at 5, 9); (3) the thoracic

part of his spine was not fractured or dislocated, (*see id.* at 8); (4) his chest showed no evidence

of "acute disease[,]" (*see id.* at 6); and (5) his right shoulder was not fractured or dislocated, (*see*

*id.* at 7).

### 3.  Plaintiff's Requested Relief

Plaintiff requests "[a]ll relief for pain & suffering due to injuries sustained & mental

anguish"; "punitive damages due to cruel & unusual punishment"; and "all other relief[] deemed

fit & proper by [the] Court."  (Compl. 5.)

### C.  Procedural History

Plaintiff's Complaint, dated March 1, 2023, was docketed on March 13, 2023.  (*See*

Compl. 1, 6)  That same day, the Court received Plaintiff's application to proceed in forma

pauperis ("IFP"), also dated March 1, 2023.  (*See* Dkt. No. 2.)  On March 15, 2023, Chief Judge

Swain granted Plaintiff's request to proceed IFP.  (*See* Dkt. No. 4.)

On July 3, 2023, Defendants submitted a letter requesting a conference regarding their

anticipated motion to dismiss, (*see* Dkt. No. 13), and the Court adopted a briefing schedule on

July 5, 2023, (*see* Dkt. No. 15).  On July 6, 2023, a letter from Plaintiff, dated June 30, 2023, was

docketed, in which he informed the Court of his updated address.  (*See* Dkt. No. 16.)  Defendants

filed the instant Motion on August 1, 2023.  (*See* Not. of Mot.; Decl. of Carol C. Pierce in Supp.

of Mot. To Dismiss (Dkt. No. 19); Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.")

(Dkt. No. 20).)  Plaintiff did not respond to Defendants' Motion.  (*See generally* Dkt.)  On

September 29, 2023, Defendants requested that the Motion be deemed fully submitted.  (*See* Dkt.

No. 22.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see*

*also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

7

original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is filed by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153 (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Defendants raise four arguments in their Motion To Dismiss.  First, they assert that the

Court must dismiss Plaintiff's Complaint because he failed to exhaust his administrative

remedies.  (Defs.' Mem. 11–13.)  Second, they argue that Plaintiff failed to state a claim against

the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (Defs.'

Mem. 8–10.)  Third, they contend Plaintiff's allegations against Roberts "do not rise to the level

of a constitutional violation."  (*Id.* at 10.)  Finally, assuming his federal claims are dismissed,

Defendants argue that the Court should decline to exercise supplemental jurisdiction over

Plaintiff's state-law claims.  (*Id.* at 13.)  The Court will address each of these arguments in turn.

1.  Exhaustion

The Court first addresses Defendants' assertion that Plaintiff failed to exhaust his

administrative remedies under the Prison Litigation Reform Act ("PLRA").  (Defs.' Mem. 11–

13.)  As an initial matter, the Court notes that "[f]ailure to exhaust administrative remedies is an

affirmative defense under the PLRA, not a pleading requirement.  Accordingly, inmates are not

required to specially plead or demonstrate exhaustion in their complaints.  However, a district

court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on

the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."

*Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quotation marks and citations omitted).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly* . . . . Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules." *Williams*, 829 F.3d at 122 (emphasis in original) (alterations, citations, and quotation marks omitted).

It is undisputed that Plaintiff was incarcerated at OCJ during the relevant time period. "[G]rievance procedures at county-level correctional facilities in New York" are governed by 9 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 7032, et seq. *Vega v. Broome County*, No. 21-CV-788, 2023 WL 6318919, at *17 (N.D.N.Y. Sept. 28, 2023); *see also Hill v. Curcione*, 657 F.3d 116, 124–25 (2d Cir. 2011) (looking to § 7032 in connection with its exhaustion analysis where the plaintiff had been housed at a county jail during the time period at issue); *Dickenson v. York*, 828 F. App'x 780, 782–83 (2d Cir. 2020) (summary order) (same); *Falls v. Campbell*, No. 17-CV-35, 2022 WL 1004179, at *6 (S.D.N.Y. Mar. 30, 2022) (same where the plaintiff was housed at OCJ); *McWillis v. County of Orange*, No. 17-CV-4805, 2018 WL 3038497, at *4 (S.D.N.Y. June 19, 2018) (same).

Section 7032 provides that "the chief administrative officer of each local correctional facility shall establish, implement and maintain a formal inmate grievance program,"

9 N.Y.C.R.R. § 7032.1, which "shall include," among other things, "a detailed description of grievance program operations including steps, timeliness, investigative processes and available internal and external appeal procedures[,]" *id.* § 7032.3(b)(1).  Under any facility's program pursuant to § 7032, an inmate must "file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Id.* § 7032.4(d).  The chief administrative officer of the facility must also designate a staff member to act as a grievance coordinator, *id.* § 7032.4(e), and the regulations provide that the chief administrative officer or designee shall "ensure that each grievance is investigated to the fullest extent necessary by an impartial person who was not personally involved in the circumstances giving rise to the grievance," *id.* § 7032.4(f).  Within five business days of receipt, the "grievance coordinator shall issue a written determination." *Id.* § 7032.4(i).  The inmate has two business days after receipt of the grievance coordinator's determination to appeal to the chief administrative officer or their designee, *id.* § 7032.4(j), after which the chief administrative officer or their designee has five business days to issue a determination, *id.* § 7032.4(k).  For "any grievance denied by the facility administrator," the inmate has three business days to indicate to the grievance coordinator that he seeks to appeal to the State Commission of Correction, and the grievance coordinator then has three business days to submit the appeal to the Commission's Citizens' Policy and Complaint Review Council ("CPCRC"). *Id.* § 7032.5(a)–(b).  Thereafter, the CPCRC "shall issue a written determination to the appeal within 45 business days of receipt." *Id.* § 7032.5(d)(1).

Notwithstanding the foregoing, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642.  As the Supreme Court has explained "the exhaustion requirement hinges on the "'availab[ility]' of administrative remedies . . . .  [A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use'

to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S. at 738).  The

Supreme Court has identified at least "three kinds of circumstances in which an administrative

remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  First,

an "administrative procedure is unavailable when . . . it operates as a simple dead end—with

officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*

Second, "an administrative scheme might be so opaque that it becomes, practically speaking,

incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary

prisoner can discern or navigate it." *Id.* at 643–44.  Third, an administrative remedy may be

unavailable "when prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation." *Id.* at 644.  The Second

Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be

exhaustive," but has declined to "opine on what other circumstances might render an otherwise

available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.

Nonetheless, these three circumstances "guide the Court's inquiry." *Khudan v. Lee*, No. 12-CV-

8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

     Here, dismissal on exhaustion grounds is plainly appropriate.  To be clear, Plaintiff did

not bear the burden of pleading that he satisfied the PLRA's exhaustion requirements.  *See Butler*

*v. Suffolk County*, No. 11-CV-2602, 2023 WL 5096218, at *23 (E.D.N.Y. Aug. 9, 2023) ("[I]t is

[the] defendants' burden to establish that [the] plaintiff failed to meet the exhaustion

requirements." (first alteration in original) (citation omitted)); *accord Key v. Toussaint*, 660 F.

Supp. 2d 518, 523 (S.D.N.Y. 2009) (adopting the underlying Report and Recommendation).

However, the timing of Plaintiff's filing of his Complaint establishes that he could not have

exhausted his administrative remedies.  More specifically, the incident at issue occurred on

February 26, 2023, (*see* Compl. 4), and Plaintiff signed the Complaint just three days later, on

March 1, 2023, (*see id.* at 6).  Plaintiff then delivered his Complaint to OCJ authorities for

mailing on March 3, 2023, (*see id.*), and the Complaint was ultimately docketed on March 13,

2023, (*see* Dkt.).  Putting aside the fact that the Complaint is silent as to whether Plaintiff filed a

grievance, (*see generally* Compl.), it would have been impossible for him to exhaust the

grievance process in the 15 days between February 26, 2023 and March 13, 2023 (much less

March 1, 2023) because the grievance process set forth in § 7032 provides, among other things,

that: the facility's grievance coordinator has five business days from the receipt of a grievance to

render a written decision, 9 N.Y.C.R.R. § 7032.4(i); the facility's chief administrative officer or

their designee has five business days to issue a determination as to any appeal of an initial

grievance decision, *id.* §§ 7032.4(j)–(k); and, thereafter, the CPCRC has up to 45 business days

to issue a written decision during the final stage of administrative appellate review, *see id.*

§ 7032.5.  Simply put, Plaintiff could not have gone through every stage of the grievance process

contemplated by § 7032 between February 26, 2023 and the date on which his Complaint was

filed.  Accordingly, Plaintiff's Complaint may be dismissed based on Plaintiff's failure to

exhaust his administrative remedies.  *See Price v. City of New York*, No. 11-CV-6170, 2012 WL

3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (dismissing the plaintiff's complaint on exhaustion

grounds where "it would have been impossible" for the plaintiff to "pursue[] his grievance

through all steps of the [applicable] procedure . . . in the 21 days between the alleged incident

and the filing of his complaint"); *see also Perez v. City of New York*, No. 14-CV-7502, 2015 WL

3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing the plaintiff's complaint because "the

[applicable] grievance process could not have been completed" between when the events at issue

took place and the date the plaintiff signed his complaint "just one week" later, among other

reasons); *cf. Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (summary order) (affirming the district court's decision granting summary judgment to the defendants where the plaintiff filed his complaint less than 30 days after he appealed one grievance and several days before he filed a second grievance); *Medina v. Nassau Cnty. Sheriff Dep't*, No. 11-CV-228, 2013 WL 4832803, at *5 (E.D.N.Y. Sept. 10, 2013) (finding, at the summary judgment stage, that that the plaintiff did not properly exhaust his administrative remedies because "it would have been impossible for [him] to properly exhaust based on the timing of his filing of the complaint[,]" which was signed "just three days" after he had filed his initial grievance).[5]

### 2. *Monell* Claim

Defendants also argue that Plaintiff has failed to make any allegations suggesting that the County can be subject to municipal liability under *Monell*. (Defs.' Mem. 8–10.) The Court agrees.

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the

---

[5] The Court notes that, upon signing the Complaint, Plaintiff indicated that he understood "that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, and that [his] case may be dismissed if [he had] not exhausted administrative remedies as required." (Compl. 6 (citation omitted).)

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff['s] injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL

666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a

municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative

link—between the policy and the deprivation of his constitutional rights" (quotation marks

omitted)).

Here—even when construing the Complaint liberally—Plaintiff makes no reference

whatsoever to any municipal policy or custom.  (*See generally* Compl.)  This is plainly

insufficient under *Monell*.  "Absent an alleged policy or custom that caused constitutional harm,

Plaintiff cannot maintain a *Monell* claim against the County."  *Sagaria v. Orange Cnty. Jail*, No.

20-CV-2287, 2021 WL 4392422, at *8 n.11 (S.D.N.Y. Sept. 24, 2021) ("Normally, a custom or

policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere

employee of the municipality." (alteration and quotation marks omitted)); *see also Lara-

Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *20 (S.D.N.Y. Mar. 29,

2018) (dismissing a *Monell* claim where the plaintiff failed "to cite or describe a policy officially

promulgated by [the county] or a specific act taken by a final policymaker of [the county]"

relevant to the plaintiff's claims, and collecting cases); *Arnold v. Westchester County*, No. 09-

CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing a claim against the

county because the complaint "[did] not allege the existence of an unconstitutional custom or

policy"), *report and recommendation adopted sub nom. Arnold v. Westchester Cnty. Dep't of

Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010); *Salvatierra v. Connolly*, No. 09-CV-3722,

2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where

the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *report

and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *5 Borough Pawn, LLC v.

City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where

the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violate[d] the Federal Constitution").[6]

### 3. Claim Against Roberts

In addition, Defendants contend that Plaintiff has failed to allege a cognizable claim against Roberts because the only allegation against him is that he yelled at Plaintiff, and such allegations "do not rise to the level of a constitutional violation."  (Defs.' Mem. 10.)

The Court agrees, as it is well settled that "[v]erbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. § 1983." *Lawtone-Bowles v. Katz*, No. 14-CV-606, 2016 WL 6834018, at *8 n.12 (S.D.N.Y. Nov. 17, 2016); *see also Lewis v. Huebner*, No. 17-CV-8101, 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 13, 2020) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged." (citation omitted)); *Khalil v. City of New York*, No. 17-CV-1729, 2019 WL 1597315, at *5 (E.D.N.Y. Apr. 15, 2019) ("Verbal threats alone are insufficient to give[] rise to a constitutional violation that is cognizable under § 1983."); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (upholding dismissal of "claim[] that prison guards called [the plaintiff] names," because this claim "did not allege any appreciable injury"); *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation.").  In the Eighth Amendment context, "[an] alleged injury must [generally] be physical in nature, although under certain circumstances, a prison official's infliction of psychological pain on an inmate may constitute an Eighth Amendment violation." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590

---

[6] In so holding, the Court expresses no view as to whether the County may be liable under the doctrine of respondeat superior in connection with Plaintiff's claims arising under state law.

(S.D.N.Y. 2015) (quotation marks omitted).  To state a claim under the Eighth Amendment for

the infliction of psychological pain, "the psychological pain must be (1) intentionally inflicted

and (2) more than de minimis in nature." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 491

(N.D.N.Y. 2009) (italics omitted); *see also Shabazz v. Pico*, 994 F. Supp. 460, 475 (S.D.N.Y.

1998) ("Under certain circumstances, the intentional infliction of psychological pain may

constitute an Eighth Amendment violation, so long as the pain is not de minimus." (italics

omitted)).  Because verbal harassment claims "may be fabricated" easily, courts "approach such

claims 'with skepticism and particular care.'" *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL

797330, at *7 (S.D.N.Y. Feb. 8, 2018) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.

2003)); *Torres v. UConn Health*, No. 17-CV-325, 2018 WL 2926277, at *5 (D. Conn. June 7,

2018) (same).

       Liberally construed, Plaintiff alleges that Roberts' conduct was intentional.  However,

Plaintiff has not alleged that he has suffered *any* psychological injury resulting from Roberts'

conduct, let alone that any such injury rose to the level of psychological pain that was more than

de minimis in nature.  (*See* Compl. 5, 7–12.)  Courts in the Second Circuit have made clear that

successfully alleging more than de minimis psychological harm is a very high bar, which the

Court finds that Plaintiff has not cleared here.  *See, e.g.*, *Shabazz*, 994 F. Supp. at 475 (finding

the plaintiff's allegations of psychological harm to be de minimis where "[the] [p]laintiff[]

claim[ed] that [the defendants] uttered racial slurs during constitutionally permitted [strip]

searches"); *see also Bacon v. Evans*, No. 20-CV-6337, 2021 WL 5643038, at *4 (S.D.N.Y. Dec.

1, 2021) (granting the defendant's motion to dismiss where the plaintiff had alleged that he

"sustained serious psychic injuries" after the defendant "made a series of derogatory comments

in reference to [the] [p]laintiff's sexual orientation . . . within earshot of other inmates in [his]

housing unit"); *Timm v. Faucher*, No. 16-CV-531, 2017 WL 1230846, at *5, *6 (D. Conn. Mar. 31, 2017) (holding that an allegation that the defendant "verbally berated and threatened [the plaintiff] in the presence of others," causing the plaintiff "severe emotional distress, fear and anguish . . . cannot survive a motion to dismiss" (emphasis omitted)).  Accordingly, with respect to Roberts' alleged conduct, the Court finds that Plaintiff has failed to state a cognizable violation of his Eighth Amendment rights because he has not alleged more than a de minimis injury.  *See Medina*, 2018 WL 797330, at *7 ("[C]ourts have held that verbal harassment of inmates by prison officials, unaccompanied by injury—no matter how inappropriate, unprofessional, or reprehensible it might seem—does not rise to the level of violation of the Eighth Amendment." (citation omitted)); *Cuoco v. U.S. Bureau of Prisons*, No. 98-CV-9009, 2001 WL 167694, at *3 (S.D.N.Y. Feb. 16, 2001) (dismissing claim that the defendants "made derisive and derogatory comments to [the plaintiff] about her sexual orientation," because "[w]hile verbal harassment and profanity is abhorrent, such conduct alone does not violate an inmate's rights under the Constitution" (quotation marks omitted)).[7]

---

[7] The Court recognizes that that Plaintiff may have intended to allege that Roberts participated in Narcise's alleged use of excessive force against him.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022) (citation omitted).  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant).  As it stands, Plaintiff has failed to plead sufficient facts to demonstrate Roberts' personal involvement in Narcise's alleged violation of his constitutional rights.

4.  Supplemental Jurisdiction

Finally, Defendants argue that the Court should "decline to exercise supplemental jurisdiction as to [Plaintiff's state-law claims] because [P]laintiff's federal claims cannot survive the instant [M]otion [T]o [D]ismiss." (Defs.' Mem. 13.)  The Court agrees.

Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims. *See* 28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and quotation marks omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (quotation marks omitted)); *Erie Grp. LLC v. Guayaba Cap., LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015) (same).

The Court finds nothing that distinguishes this Action from "the usual case." *See Cohill*, 484 U.S.at 350 n.7.  Plaintiff's federal claims have all been dismissed, *see Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal

claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7.  Thus, Plaintiff's state claims are dismissed without prejudice.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss in its entirety.  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified above.  Plaintiff is advised that the amended complaint will replace, not supplement, the original Complaint, and therefore must contain *all* of the alleged facts that the Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.[8]

---

[8] Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this District.  The clinic is run by a private organization; it is not part of, or run by, the Court.  It cannot accept filings on behalf of the Court.

To receive limited-scope assistance from the clinic, Plaintiff may complete the clinic's intake form on a computer or phone at: https://tinyurl.com/NYLAG-ProSe-OI.  If Plaintiff has questions regarding the form or is unable to complete it, he may leave a voicemail at (212) 659-5190.  The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to Plaintiff and to terminate the pending Motion.  (*See* Dkt. No. 18.)

SO ORDERED.

Dated:   December 5, 2023
         White Plains, New York

                                                KENNETH M. KARAS
                                                United States District Judge